IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| REDMAN HOME BUILDERS CO. | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. CV- 2: 07-107 |
| | ) |
| ANDREW LEWIS and MARY LEWIS | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

This matter is before the Court on defendants' "Motion to Dismiss" (Doc. 11) brief in support (Doc. 12) filed March 9, 2007 and supplemental brief in support (Doc.16) filed March 30, 2007; plaintiff's response in opposition thereto (Doc. 17) filed April 6, 2007, and defendants' reply brief, (Doc. 22) filed April 25, 2007.  Upon consideration, and for the reasons set out more fully below, defendants' motion to dismiss is **GRANTED.**

**I.     PROCEDURAL HISTORY**

On February 13, 2007, plaintiff, Redman Homes, Inc., ("Redman" or "plaintiff") pursuant to the Federal Arbitration Act 9 U.S.C. § 4[1], filed a complaint and petition to compel

---

[1] 9 U.S.C. § 4 provides as follows:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the

1

arbitration against defendants Andrew Lewis and Mary Lewis ("Lewises" or "defendants"). (Doc. 1) Redman alleges that the filing of its' petition was instigated by the Lewises' "improper filing of a demand for a purported class action arbitration...." (Id. at 1) Redman seeks a declaration that the Lewises's class arbitration demand is "contrary to Alabama law, is in direct contradiction of Defendant's Arbitration Agreement and is impermissible." (Id. at 15)  In addition, Redman seeks injunctive relief in that it requests that this Court "compel" the Lewises to "arbitrate their dispute as expressly provided in the Arbitration Agreement." (Id. at 4)

On March 9, 2007 the Lewises filed the instant motion to dismiss on the grounds, in sum,

---

controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

that this Court lacks subject matter jurisdiction over this action. (Docs. 11, 12) The Lewises filed a supplemental brief on March 30, 2007. (Doc. 16) In opposition to the motion to dismiss Redman maintains that the Court has jurisdiction under the Federal Arbitration Act 9 U.S.C. § 4 and 28 U.S.C. § 1332. (Doc. 17) The defendants' motion to dismiss has been fully briefed and is now ripe for this Court's consideration.

## II.     FACTUAL BACKGROUND

1.     On or about September 9, 2002, the Lewises purchased a Redman manufactured mobile home from Future Housing, which is located in Tuscaloosa County, Alabama. (Doc. 1, ¶ 8.) At the time of the purchase of the home, Redman provided the Lewises with a one-year limited warranty that contained the following arbitration agreement:

> ARBITRATION AND LIMITATION OF REMEDIES:
>
> It is agreed that any controversy, claim or dispute between or among the Manufacturer, homeowner, independent dealer, finance company or any other person or entity arising from or relating to the Manufactured Home, its sale, transportation, setup, repair, installation, use, design, manufacture, financing, insurance, any other condition, the manufacturers limited warranty, any contract or any alleged promise, representation, agreement or instrument relating to or delivered in connection with the Manufactured Home, or any alleged breach thereof, and any claim based on or arising from an alleged tort or claim of any kind whatsoever, including any claim relating to the validity of this arbitration provision [collectively "Claim(s)"], and if the Claim(s) cannot be resolved through direct discussions or negotiations, the Claim(s) first shall be mediated as administered by the American Arbitration Association under its Commercial Mediation Rules before resorting to binding arbitration. Thereafter, any unresolved Claim(s) shall be settled by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and any judgment on the award rendered by the arbitrator(s) may be

>   entered in any Court having jurisdiction thereof. All fees and
>   expenses of the mediation or arbitration shall be borne by the
>   parties equally, unless otherwise agreed in writing. Moreover,
>   each party shall bear the expense of its own counsel, experts,
>   witnesses and other costs, including preparation and presentation
>   of proofs. All mediation or arbitration proceedings shall be
>   conducted in the jurisdiction of the original retail sale or at any
>   other place selected by agreement of all parties.
>   IT IS AGREED AND UNDERSTOOD THAT THE PARTIES
>   ARE KNOWINGLY GIVING UP AND WAIVING CERTAIN
>   RIGHTS TO TRIAL BY JURY. This arbitration and limitation of
>   remedies provision is part of the manufacturers limited warranty
>   for the Manufactured Home and shall be binding on and inure to
>   the benefit of the parties respective heirs and assigns.

(Doc. 1, Ex. 1, p. 10.)[2]

2.      A dispute arose between the parties regarding the condition of the Lewises' manufactured home. On July 31, 2006 counsel for the Lewises submitted a demand to arbitrate their claims against Redman[3] with the American Arbitration Association ("AAA"). At that time counsel for the Lewises forwarded a check in the amount of $375.00 to the AAA along with the arbitration demand. (Doc. 12 at Exhibit A)

3.      Over the next several months correspondence was exchanged between counsel for the parties regarding the arbitration and the possibility of pre-arbitration mediation as set out in the arbitration agreement. (Doc. 12, Exhibits B, C, D, E.)

4.      On September 28, 2006, Redman submitted a proposed "Agreement to Mediate

---

[2] The arbitration agreement is silent as to consolidation of arbitrations and class wide arbitrations.

[3] In the underlying complaint, the Lewises allege, in sum, that Redman Homes "maintained that the subject home was a good home that was safe, durable, and worth a certain value or the price paid and suppressed the fact that the defendants knew or should have known of the subject home's defective design and construction, its condensation problems, its excessive moisture problems...." (Doc. 12, Exhibit A)

and Arbitrate", wherein the parties would first mediate their dispute and then, if unsuccessful, arbitrate the claims. (Doc. 12, Exhibit B.)[4]

    5.    In an October 2, 2006 letter, counsel for the Lewises rejected the mediation/arbitration proposal, stating:

> In response to your recent letter dated September 28, 2006, the proposed mediation and arbitration agreement you attached is unacceptable. Please let us know the names of potential arbitrators before whom your client will agree to arbitrate *before the parties spend additional time and money to arbitrate through the AAA* so that we can see after our review if the parties can agree upon an arbitrator to resolve the claims in this dispute."

(Doc. 12, Exhibit C) (emphasis added)

    6.    By letter dated October 3, 2006 counsel for Redman acknowledged the Lewises' rejection of the agreement and invited the Lewises to "make any changes you feel are necessary so that we can consider a proposed agreement from you. Your letter gave us no indication as to why the agreement is unacceptable, but we are glad to work with you in coming to some type of agreement to proceed through arbitration."  (Doc. 12, Exhibit D)

    7.    On October 6, 2006, the Lewises further explained their objection to the proposed Agreement to Mediate and Arbitrate as follows:

> As you know, the parties already agreed to resolve this dispute through arbitration. The proposal that you suggested for arbitration is unacceptable. *We intend to resolve these claims through the American Arbitration Association based upon the agreement between the parties to arbitrate. In the alternative, please provide us with the names of any potential arbitrators before whom your clients will agree to arbitrate. We will consider any potential arbitrators you suggest to determine whether the parties can agree upon any arbitrator outside the AAA forum.*

---

    [4] This appears to be the proper procedure as envisioned in the arbitration agreement made part of the manufacturer's warranty.

(Doc. 12, Exhibit E.) (emphasis added).

8. An October 18, 2006 e-mail exchange reflects a disagreement between counsel regarding whether the dispute is to be arbitrated via AAA procedures or through "some alternative forum." (Doc. 17, Exhibit 1)

9. On October 31, 2006, the AAA sent a letter to counsel for the Lewises confirming that the Lewises' claims would *not* proceed before the AAA:

> As of this date, we have not received the required submissions and fees from the business in this matter. Accordingly, we must decline to administer this case. Any payment submitted by a party will be sent to that party via U.S. Mail.

(Doc. 17, Exhibit B)

10. A November 15, 2006 e-mail exchange between counsel for the parties and Charles Fleming, Esq., confirms the parties' agreement to appoint Fleming to arbitrate the Lewises' claims against Redman. (Doc. 12, Exhibit F)

11. On or about December 18, 2006 the Lewises submitted a demand for class arbitration. (Doc. 1, ¶ 18 and Exhibit B) The Class Arbitration Demand states, in part, that the Lewises wish to consolidate their individual arbitration claims with those of "all others similarly situated in Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, and Texas who have purchased mobile homes from Respondents Redman Homes, Inc. . . . on or after September 9, 2002" and demand that the class arbitration be held in Wilcox County, Alabama. (Doc. 1, Exhibit B at ¶ 1)

12. Thereafter, on December 28, 2006 Charles Fleming, Esq., issued a request to counsel for Redman to provide him with a response to the class arbitration demand. (Doc. 12,

Exhibit H)[5]

13.     On February 13, 2007 Redman Homes filed the instant complaint seeking an order from the court "compel[ling] Defendants to arbitrate their dispute as expressly provided in the Arbitration Agreement in an individual arbitration in the jurisdiction where their manufactured home was sold...."  (Doc. 1 at 15)

14.     On February 14, 2007 counsel for Redman wrote Charles Fleming. Esq. advising that they were withdrawing any "alleged consent...to arbitrate any purported class claims whatsoever in any forum."  (Doc. 17, Exhibit C)

### III.    STANDARD ON MOTION TO DISMISS

Defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1).  In opposition, plaintiff first argues that the motion is procedurally defective.  Specifically, plaintiff contends that the Lewises are asking the Court to rule as a matter of law on legal issues presented in Redman's Complaint, and in doing so, ask the Court to consider  letters and other miscellaneous matters attached as exhibits to the Lewises' motion.  Redman argues that if the Court is to consider this extraneous evidence, the Lewises' motion really becomes one in the nature of a summary judgment which should be heard after discovery is complete. [6]

---

[5]  The letter references Dixon v. Patriot Homes of Alabama, Inc., et al and Kelley v. Gateway Homes and states in part: "[a]s you know, the plaintiffs have filed a class arbitration demand in these cases, very similar to the ones filed in the James v. River Birch Homes and Lewis v. Redman Homes cases...At this point, I am basically intereseted in the defendants' contentions, if any, that the class arbitration demand, in and of itself, is improper for these plaintiffs against these defendants in these arbitrations."

[6]  The parties Rule 16(f) report of parties is due May 25, 2007.  The proper procedure for raising an issue that a motion for summary judgment is premature because discovery is not closed is found in Fed. R. Civ. P. 56(f), which provides:

In reply defendants maintain that when ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may consider evidence outside the pleadings.

The documents submitted by the Lewises' in support of their motion to dismiss consist of, for the most part, correspondence between counsel regarding the terms and conditions of the arbitration.  While a motion brought pursuant to Fed. R. Civ. P. 12(b)(6) must be converted to a motion for summary judgment if the court considers matters outside the pleadings, those constraints are not necessarily present when the court is faced with a motion brought pursuant to Fed. R. Civ. P. 12(b)(1).

"Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, 'facial' and 'factual' attacks.  Morrison v. Amway Corp., 323 F.3d 920, 925, n.5 (11th Cir. 2003) citing Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir.1990). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. Id. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. Id. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits. Id.

The Eleventh Circuit Court of Appeals has held that "[w]hen ruling on a 12(b)(1) motion, [ ] the court is not prevented from inquiring into undisputed facts. A challenge to the court's

---

> Should it appear from the *affidavits* of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).  Counsel for Redman has not submitted a 56(f) affidavit in support of this contention.

8

subject matter jurisdiction can properly be resolved on undisputed facts, even if such a challenge involves a direct attack on the merits of plaintiff's claim". SEC v. Mutual Benefits Corp., 408 F. 3d 737, 742 (11th Cir. 2005)(internal citations omitted)

> In Morrison v. Amway Corp., the Eleventh Circuit Court of Appeals opined, in part:

> ...[W]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and may proceed as it never could under Rule 12(b)(6) or Fed.R.Civ.P. 56.) Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue. *We have cautioned, however, that the district court should only rely on Rule 12(b)(1) "[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action.". If a jurisdictional challenge does implicate the merits of the underlying claim then: [T]he proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.... Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits.* This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection for the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court's discretion....

323 F. 3d at 925. (internal citations omitted)(emphasis added)

> In Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327 (11th Cir. 2001), the Court opined:

> A federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the proceedings, and facts outside of the pleadings may be considered as part of that determination. See, e.g., Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir.2001) ("[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises.").

259 F.3d at 1332, n.6.

Fact-based attacks on the court's subject matter jurisdiction are addressed under Rule 12(b)(1), and the court may consider matters outside the pleadings without converting the motion into a summary judgment motion. Id. at 1331. The Court finds that the motion has been properly brought pursuant to Rule 12(b)(1) and the Court will analyze it under that framework.

## IV.     DISCUSSION

Defendants move to dismiss the complaint on the grounds, in sum, that this court lacks jurisdiction over this matter. (Doc. 12)   Redman's complaint to compel arbitration invokes jurisdiction pursuant to the FAA and 28 U.S.C. §1332.  (Doc. 1)  In their motion to dismiss defendants argue that the FAA does not provide an independent basis for federal subject matter jurisdiction and that Redman has not properly pled the requisite amount in controversy such that the Court would have diversity jurisdiction. (Doc. 12 at 5)

*Federal Arbitration Act*[7]

Pursuant to Title 9 U.S.C. § 4[8] of the FAA, an order compelling arbitration is permissible only where the federal district court would have jurisdiction over a suit on the underlying

---

[7] Pursuant to the Federal Arbitration Act, a written arbitration "provision in any ... contract evidencing a transaction involving commerce ... [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" to petition the court "for an order directing that such arbitration proceed." 9 U.S.C. § 4. When a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id.

[8] Section 4 provides a remedy to "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate."  There is nothing in the record to reflect, nor does Redman suggest that the Lewises declined or refused to participate in arbitration.  Moreover, prior to the Lewises filing of the class demand, the arbitration procedure had commenced.

dispute.  Household Bank v. JFS Group, 320 F.3d 1249, 1253 ( 11th Cir. 2003) (The Arbitration Act "does not provide an independent basis for a federal court's subject-matter jurisdiction.")  Thus, jurisdiction may not be premised solely on Section 4.  Therefore, in order to invoke the court's jurisdiction, there must be diversity of citizenship or some other independent basis for federal jurisdiction.  Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997) cert. denied 525 U.S. 841, 119 S. Ct. 105, 142 L. Ed. 2d 84 (1998);  Household Bank v. JFS Group, 320 F.3d at 1253.

*Diversity Jurisdiction*

Redman maintains that the Court has diversity jurisdiction over its complaint on the grounds that there is complete diversity between the parties and the amount in controversy is over $75,000 based on the Lewises' individual arbitration demand.[9]  Specifically, Redman notes that the Lewises' original demand to arbitrate their individual claims against Redman on its face expressly seeks $75,000, plus legal fees, costs and expenses, and incidental, consequential, lost value and mental anguish damages. (See Doc. 12, Exhibit A).  Based on this, Redman argues the Court may properly exercise diversity jurisdiction over this matter.

While the Lewises concede that "it appears that the parties are of diverse citizenship," they argue that their arbitration demand claims are not the correct measure of the "amount in controversy."  (Doc. 12 at 5)   Specifically, the Lewises argue that when a party seeks to compel

---

[9]Citing to Clearwater Ins. Co. v. Granite State Ins. Co., 2006 WL 2827872 (N.D.Cal., October 2, 2006) (slip opinion), Redman argues, as an aside, that the court has jurisdiction over this action under 9 U.S.C. § 5.  Neither the cited case or the statute provide support for Redman's proposition.  9 U.S.C. § 5 merely provides for resolving a dispute over the appointment of an arbiter in a case which could be brought under the FAA and does not provide a basis for independent federal jurisdiction.

11

arbitration or enjoin an ongoing arbitration the amount in controversy is measured by the value of what is sought in the Complaint seeking to compel arbitration, not the claims in the underlying dispute. (Id.) Specifically, defendants argue that the proper value is determined by comparing "the cost of litigating whether class arbitration is appropriate before the arbitrator versus the cost of litigating whether class arbitration is appropriate before this Court." (Id. at 6) Defendants maintain that the value is "indeterminate" and "speculative" and therefore does not satisfy the amount in controversy requirement. (Id.)

In response, Redman argues that the Lewises' proposed measure of the amount in controversy runs contrary both to the letter of the FAA and U.S. Supreme Court authority interpreting the FAA. (Doc. 22 at 9) Redman warns that should this Court adopt the Lewises' measure of the amount in controversy, FAA § 4 would be effectively read out of existence as no aggrieved party seeking to compel arbitration would ever be able to establish the requisite amount in controversy separate and apart from that in the underlying dispute. (Id.)

The Court need not resolve the issue of diversity jurisdiction since, as explained below, the Court lacks jurisdiction to consider the issue.

*Case or Controversy Requirement*

Article III, section two of the United States Constitution limits this Court's jurisdiction to "cases" and "controversies." Provident Life & Acc. Ins. Co. TransAmerica-Occidental Life Ins. Co.¸ 850 F.2d 1489, 1491 (11th Cir. 1988) cert. denied 489 U.S. 1081, 109 S.Ct. 1534, 103 L. Ed 2d 839 (1989)("The controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a degree of conclusive character, as distinguished from an opinion

advising what the law would be upon a hypothetical state of facts.") "[I]f a party makes a motion to compel arbitration under 9 U.S.C. § 4, a district court must determine if there exists a case or controversy in order for it to exercise its jurisdiction over that motion to compel.  While the absence of a case or controversy requires a court to abstain from mandating arbitration, this does not give it the right to enjoin arbitration." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1110, n. 19 (11th Cir. 2004)

     Defendants argue that the Court lacks jurisdiction on the grounds that there exists no case or controversy.  Specifically, defendants argue that whether class arbitration is allowable is a matter for resolution by the arbitrator, not this Court, and because the arbitrator has not yet issued his decision on the propriety of class arbitration, there is no present case or controversy for this Court to review.  Defendants note that the arbitration agreement at issue does not expressly prohibit class actions and "incorporates the Rules of the American Arbitration Association, which specifically provide procedures for class arbitration and determining whether class arbitration is appropriate."  (Doc. 12  at 7)

     Redman contends that the "FAA § 4 is specifically drafted to bring the very type of dispute currently at issue between these parties to this Court."  Redman relies, in part, on Sterling Fin. Inv. Group, Inc. v. Hammer, 393 F.3d 1223 (11th  Cir. 2004).  The issue before the Eleventh Circuit in Sterling was whether the district court properly enjoined arbitration in Houston, Texas and compelled arbitration in Boca Raton, Florida.  Id. The Court held that pursuant to FAA Section 4, the district court had jurisdiction to enforce a forum selection clause in a valid arbitration agreement when that clause had been disregarded by the arbitrators. Id. at 1225.

In reply defendant notes that <u>Sterling</u> is distinguishable since it involved a demand for arbitration in a venue different from that specified in the arbitration agreement. The Court concurs that <u>Sterling</u> is not dispositive of the issue at hand. [10]

Although Redman concedes that it had previously consented for Charles Fleming to act as arbitrator it maintains that consent was limited and was "solely for resolution of the Lewises' individual claims" and that Fleming did not have the authority to act as arbitrator in any other capacity.[11] Redman further argues that it is not "participating in arbitration" as defendants represent to the Court. Finally, Redman argues that there are several "gateway issues" that present a case in controversy, including the following:   a) Is there a binding arbitration agreement between the parties? b) Was there a meeting of the minds between the parties as to the post dispute arbitration agreement to go outside the AAA? c) If there was a post-dispute arbitration agreement reached between the parties to go outside the AAA to arbitrate the Lewises' individual claims, was there any meeting of the minds as to whether that would alter or amend all other Redman Homes customer arbitration agreements?.

The issue at hand is not whether the parties have entered into a valid arbitration

---

[10] Redman also argues that pursuant to the arbitration agreement, the arbitration must be held in Tuscaloosa County rather than Wilcox County, as demanded in the Lewises' class arbitration demand. In response, the Lewises argue that Redman has waived its venue defense since it failed to raise the issue of venue in response to the Lewises' arbitration demand. Notwithstanding, counsel for the Lewises represent that they "are willing to and stipulate that they will arbitrate this matter in either Tuscaloosa County or Mobile County, whichever Redman chooses. Provided, however, that Redman is bound by its prior agreement to arbitrate pursuant to the AAA Rules before Charles Fleming."

[11] Defendants contend that Redman agreed to the AAA Rules and to use Mr. Fleming as an arbitrator. Plaintiffs counter that the agreement to use Fleming as an arbitrator was an agreement outside arbitration and note that Fleming is not an AAA approved arbitrator.

14

agreement - although Redman makes an attempt to cast it in this light. Although Redman maintains there is no "ongoing arbitration" and moves the Court to compel arbitration, the fact of the matter is that *neither* party is resisting arbitration. In fact, the arbitration process clearly commenced with the appointment and acceptance of Charles Fleming as the arbitrator. Rather, this arbitration went awry when counsel for the Lewises submitted a demand for class arbitration.[12] Redman now attempts to invoke this Court's jurisdiction to micro-manage the arbitration of the underlying dispute by deciding whether the agreement enables the plaintiffs to demand class arbitration. The Court is without jurisdiction to do so.

The Court's authority for this ruling is embedded in rulings from both the United States Supreme Court as well as the Eleventh Circuit Court of Appeals. In Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452-53, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003), the Supreme Court held that when an arbitration agreement does not clearly preclude class arbitration, the arbitrator, and not the court, must decide whether class arbitration is appropriate. Id. at 447. Specifically, in Green Tree, the Court held that the question of whether the parties' agreement prohibited the use of class arbitration procedures was an issue for the arbitrator because "[i]t concerns contract interpretation and arbitration procedures," rather than "judicial procedures." Id. at 452-53. The Court reaffirmed the general division of labor articulated in Howsam[13], noting that the issues which relate to "what kind of arbitration proceeding the parties agreed to" are presumptively for

---

[12] Redman argues that if this Court dismisses this action and permits Mr. Fleming to decide the rights of the class, then any class award (or settlement) that results will be completely unenforceable under the Full Faith and Credit clause of the U.S. Constitution because there are no procedural rules in place to guarantee the due process rights of the class.

[13] Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002).

the arbitrator to decide, while issues related to "whether they agreed to arbitrate a matter," are presumptively entrusted to the court for resolution. Id. at 452 (emphasis omitted). Along that same line, the Eleventh Circuit has held that when an arbitration agreement does not clearly preclude class arbitration, "the arbitrator, rather than the court, must resolve the issue as a matter of state law." See Rollins, Inc. v. Garrett, 176 Fed. Appx. 968, 2006 WL 1024166, *1 (11th Cir., Apr. 19, 2006) (unpublished).

Redman requests this Court to decide which type of arbitration proceeding that the parties are subject to, i.e. individual or class wide. The arbitration agreement itself is silent as to the issue of class action arbitration. The Supreme Court has spoken to this issue and pursuant to the holding in Bazzle, the Court finds that this issue is the kind of procedural matter than falls to the arbitrator. Gipson v. Cross Country Bank, 354 F.Supp.2d 1278, 1285 (M.D.Ala.2005) (construing Bazzle as meaning that, when arbitration provision does not expressly permit or prohibit class-wide arbitration, decision as to whether it forbids class arbitration is for arbitrator, not court); Johnson v. Long John Silver's Restaurants, Inc., 320 F.Supp.2d 656, 668 (M.D.Tenn 2004), aff'd 414 F.3d 583 (6th Cir. 2005) (post Bazzle, "this Court cannot determine whether a prohibition on class arbitration would effectively vindicate rights because this Court does not have the authority to decide whether the contract permits class arbitrations").

## IV.     CONCLUSION

Based on the authority set forth in Bazzle and Rollins the Court finds that these issues are ones that should be addressed by the arbitrator and not the Court. Accordingly, defendants' motion to dismiss is **GRANTED.**

**DONE AND ORDERED** this 29th day of May 2007.

                                   s/ Kristi K. DuBose
                                   **KRISTI K. DuBOSE**
                                   **UNITED STATES DISTRICT JUDGE**